IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| JUDY-ANN JAMES-FREDERICK, | |
| | Civil Action No. 12-80 (SDW) |
| Plaintiff, | |
| v. | |
| | **OPINION** |
| FRENCHMAN'S REEF AND MORNING STAR MARRIOTT BEACH RESORT; MARRIOTT HOTEL SERVICES, INC.; MARRIOTT HOTEL MANAGEMENT COMPANY; DAVID SWEENY; and JOHN DOE (unknown male Hispanic), | August 1, 2013 |
| Defendants. | |

Before the Court are Defendant Marriott Hotel Management Company (Virgin Islands), Incorporated[1] ("MHMC") and Marriott Hotel Services, Incorporated's ("MHS") Motions to Dismiss the Complaint and First Amended Complaint[2] pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the Court are David Sweeny's ("Sweeny") Motions to Dismiss the Complaint and First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court has jurisdiction pursuant to 42 U.S.C 2000e, et seq., 28 U.S.C. § 1343, and 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having

---

[1] Defense counsel notes in its brief that defendant "Marriott Hotel Management Company" as named in the Complaint is incorrect and the correct legal name is "Marriott Hotel Management Company (Virgin Islands), Inc." (MHMC and MHS Br. 1 n.1.) Additionally, counsel notes that "Frenchman's Reef and Morning Star Marriott Beach Resort" is a named defendant in the Complaint; however, it is not a legal entity capable of being sued. (Id.) Marriott Hotel Management Company (Virgin Islands), Inc. does business under this name. (Id.)

[2] On July 18, 2013, United States Magistrate Judge Ruth Miller held a conference with the parties. (Dkt. 43-44.) At that conference, Plaintiff's request to amend the Complaint to replace the name of John Doe was granted. (Dkt. 43.) On July 23, 2013, Plaintiff filed the First Amended Complaint where the only material change was the identification of John Doe as Robert Mendoza. (Dkt. 45.) Aside from this change, the First Amended Complaint is nearly identical to Plaintiff's original Complaint. Because the pending Motions to Dismiss present substantive arguments that apply equally to the First Amended Complaint, this Court will address these Motions as they relate to the First Amended Complaint.

considered the parties' submissions, decides the Motions to Dismiss without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated below, this Court **GRANTS** MHMC and MHS's Motions to Dismiss and **GRANTS** Sweeny's Motions to Dismiss. Pursuant to Federal Rule 15(a)(2), Plaintiff is granted thirty (30) days leave to amend the First Amended Complaint with respect to her claims for hostile work environment (Count I), constructive discharge (Count II), vicarious liability (Count III), intentional infliction of emotional distress (Count IV), negligent infliction of emotional distress (Count V), negligent retention of an employee (Count VI), and negligent supervision (VIII).

**FACTUAL HISTORY**

Plaintiff Judy-Ann James Frederick ("Plaintiff") was employed at the Frenchman's Reef and Morning Star Marriott Beach Resort ("Resort") as a Training Manager for three years until she resigned on December 6, 2011.[3] (Am. Compl. ¶¶ 20, 55, 63.) On November 10, 2011, while Plaintiff was entering the Resort, she noticed that a box was blocking an emergency exit and office entrance. (Am. Compl. ¶ 22.) Plaintiff asked Robert Mendoza ("Mendoza"), a Hispanic male in the area,[4] to remove the box. (Am. Compl. ¶¶ 23-26.) Mendoza refused to move the box and allegedly engaged in a heated verbal exchange with Plaintiff. (Am. Compl. ¶ 27-31; MHMC and MHS Disc. Mem., at 2.) Plaintiff alleges that Mendoza said "me no move nothing, you not my boss, you no tell me what to do." (Am. Compl. ¶ 27.) Plaintiff further alleges that Mendoza waved his hand in her face and said "that he would 'meet me' (sic), which Plaintiff interpreted as a threat within and outside of the workplace." (Am. Compl. ¶¶ 30-31.)

---

[3] Plaintiff asserts in her First Amended Complaint that she began working at the Resort in October 2009. (Am. Compl. ¶ 20.) Pursuant to MHMC and MHS's discovery memorandum, Plaintiff began working on or about February 1, 2008. (Dkt. 31, MHMC and MHS Disc. Mem., at 1 (April 15, 2013).)
[4] This Court notes that Robert Mendoza was formerly identified as "John Doe" in the original Complaint and case caption. (See Dkt. 46, 47.)

After the exchange with Mendoza, Plaintiff reported the incident to security officer Sandra Morton ("Morton"). (Am. Compl. ¶ 32.) Plaintiff also asked Morton to have Mendoza remove the box. (Am. Compl. ¶ 32.) Plaintiff alleges that "Morton [ ] refused to take Plaintiff's report about the incident." (Am. Compl. ¶ 34.) Plaintiff then reported the incident to Katherine Jimenez ("Jimenez"), the Director of Human Resources. (Am. Compl. ¶ 38.) Plaintiff told Jimenez that she did not feel safe, that Mendoza threatened her, and that she was going to call the police. (Am. Compl. ¶ 38.) Plaintiff refrained from calling the police because Jimenez asked her to allow time to address the situation internally. (Am. Compl. ¶¶ 39-40.)

Later that day, Mendoza was escorted off the Resort. (Am. Compl. ¶ 41.) According to MHMC, Mendoza was "sent home pending further investigation into the matter." (MHMC and MHS Disc. Mem., at 2.) As part of its investigation, MHMC stated that it conducted interviews of Plaintiff, Mendoza, witnesses, and other individuals with knowledge of the incident. (MHMC and MHS Disc. Mem., at 3.)

On November 17, 2011, Morton allegedly told Plaintiff that Mendoza was escorted onto the Resort by his boss, Sweeny. (Am. Compl. ¶ 42.) According to the First Amended Complaint, Plaintiff informed Jimenez that Mendoza was on the premises and Jimenez responded that "no that could not be, we had an agreement that he would not return to property (sic)." (Am. Compl. ¶¶ 44-45.) On November 18, 2011, Plaintiff alleges that she saw Mendoza and Sweeny and "froze remembering the initial threat that was made by him." (Am. Compl. ¶ 46.) Plaintiff states that she told Jimenez about seeing Mendoza and feeling scared. (Am. Compl. ¶ 47.) Plaintiff indicated that she also met with Reynaldo Rey, the Director of Operations, and informed him of the situation with Mendoza. (Am. Compl. ¶ 48.)

3

According to MHMC, on November 18, 2011, Plaintiff sent an email to various individuals involved in the investigation—including Rey and Jimenez—notifying them about Mendoza's presence on the premises on two occasions since the incident. (MHMC and MHS Disc. Mem., at 3; Am. Compl. ¶ 49.)  Jimenez spoke to Plaintiff on November 28, 2011 and informed her that the investigation regarding Mendoza was still ongoing.  (See Am. Compl. ¶ 50; MHMC and MHS Disc. Mem., at 3-4.)

On December 6, 2011, Plaintiff alleges that she saw Mendoza on the premises again and "felt like she was having a panic attack."  (Am. Compl. ¶ 52.)  Plaintiff indicates that she called security and Jimenez to identify Mendoza to them.  (Am. Compl. ¶ 52.)  Later that day, Plaintiff was informed that "while they [were] concerned for [her] safety, the decision to allow [ ] Mendoza to continue to work on the property was because his skill set was needed to get the job done. They also told [ ] Plaintiff that if she has any more run-ins with [ ] Mendoza to inform both of them as soon as possible."  (Am. Compl. ¶ 54.)  Plaintiff resigned from her position "[b]ecause of the personal threats made by [ ] Mendoza."  (Am. Compl. ¶ 66.)

Plaintiff notes that "three key people in management, Mr. Jose Gonzalez, Ms. Katherine Jimenez, and Mr. Reynaldo Rey, favored [ ] Mendoza because he is of the same race, color[,] and national origin as them – Hispanic – and that her safety was ultimately of no consequence to them[.]" (Compl. ¶ 58.)

**PROCEDURAL HISTORY**

Plaintiff filed a Complaint in the Superior Court of the Virgin Islands.  Defendants removed the case to the District Court of the Virgin Islands.  Plaintiff alleges counts for hostile work environment (Count I), constructive discharge (Count II), vicarious liability (Count III), intentional infliction of emotional distress (Count IV), negligent infliction of emotional distress

4

(Count V), negligent retention of an employee (Count VI), assault[5] (Count VII), and negligent supervision (VIII). On November 14, 2012, MHMC and MHS filed a Motion to Dismiss, which was fully briefed. (Dkt. 6-8, 12.) On April 28, 2013, Sweeny filed a Motion to Dismiss, which was not opposed. (Dkt. 28.)

On July 23, 2013, Plaintiff filed her First Amended Complaint in which the only material change was the identification of John Doe as Robert Mendoza. (Dkt. 45.) On July 23, 2013, Sweeny filed an additional Motion to Dismiss, which addressed the name change of John Doe to Robert Mendoza and noted reliance on the substantive arguments set forth in the previously-filed Motion to Dismiss. (Dkt. 47.) On July 30, 2013, MHMC and MHS filed an additional Motion to Dismiss, which addressed the name change of John Doe to Robert Mendoza and noted reliance on the substantive arguments set forth in the previously-filed Motion to Dismiss. (Dkt. 50.)

**LEGAL STANDARD**

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief").

---

[5] Plaintiff's claim for assault is directed only to Mendoza. (See Compl. ¶¶ 99-102.) Because MHMC, MHS, and Sweeny do not raise any objections to this claim in their motions, it is not addressed in the instant Opinion.

5

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips, 515 F.3d at 231 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). Id. at 679.

According to the Supreme Court in Twombly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[/her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (internal citations omitted). The Third Circuit summarized the Twombly pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In Fowler v. UPMC Shadyside, the Third Circuit directed district courts to conduct a two-part analysis. 578 F.3d 203, 210 (3d Cir. 2009). First, the court must separate the factual elements from the legal conclusions. See id. The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11. Second, the court

6

must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 566 U.S. at 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id. (citing Phillips, 515 F.3d at 234-35.)

**DISCUSSION**

    **I.    MHMC and MHS's Motions to Dismiss**

        **A.  Count I: Hostile Work Environment**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a claim for hostile work environment under Title VII, a plaintiff must establish the following elements:

> (1) that she suffered intentional discrimination because of her race [or other protected classification]; (2) that the discrimination was pervasive and regular; (3) that the discrimination detrimentally affected the plaintiff; (4) that the discrimination would have detrimentally affected a reasonable person of the same race [or other protected classification] as the plaintiff, in like position; and (5) a basis for respondeat superior liability.

Page v. City of Pittsburgh, 114 F. App'x 52, 54 (3d Cir. 2004). As the Supreme Court held in Faragher v. City of Boca Raton, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" do not constitute discrimination actionable under Title VII. 524 U.S. 775, 788 (1998) (internal citation omitted).

In the instant matter, Plaintiff raises a hostile work environment claim based on alleged gender discrimination. (See Am. Compl. ¶ 68 (asserting that "Plaintiff is a woman and thus a member of a protected class").) Plaintiff alleges that she "was discriminated against on the basis of gender, subjected to repeated incidents of discriminatory sexual harassment by the

7

maintenance of a hostile work environment, denied any redress when she complained and made to endure a more hostile environment which included verbally and physically abusive behavior." (Am. Compl. ¶ 2.) In support of her claim, Plaintiff argues that the altercation she had with Mendoza and his repeated threats created a hostile work environment. (See generally Am. Compl.; Pl. Opp. 8-9.) She further argues that MHMC and MHS's failure to properly handle her complaints about Mendoza contributed to the hostile work environment. (See generally Am. Compl; Pl. Opp. 8-9.)

Plaintiff also alleges racial discrimination. In her First Amended Complaint, Plaintiff states, "the three key people in management, Mr. Jose Gonzalez, Ms. Katherine Jimenez and Mr. Reynaldo Rey, favored Mendoza because he is of the same race, color and national origin of them – Hispanic – and that her safety was ultimately of no consequence to them[.]" (Am. Compl. ¶ 58.)

This Court finds that Plaintiff's allegations are conclusory and fail to sufficiently plead a viable cause of action under Title VII. Plaintiff's hostile work environment claim is primarily based on one incident she had with Mendoza, threats from Mendoza, and MHMC and MHS's subsequent investigation relating to the incident. Notably, Plaintiff does not explain how the allegations constitute discrimination based on her sex or race. For instance, Plaintiff does not allege that she would have been treated differently if she was male or of a different race. Looking at the totality of circumstances, Plaintiff fails to allege any facts—beyond her bare assertions—indicating that MHMC and MHS were motivated by discriminatory intent. Without meeting this threshold, Plaintiff cannot survive the motion to dismiss stage with respect to her hostile work environment claim.

### B. Count II: Constructive Discharge

The Virgin Islands Wrongful Discharge Act ("WDA") enumerates reasons for which "an employer may dismiss an employee" and also provides that "[a]ny employee discharged for reasons other than those stated in subsection (a) of [24 V.I.C. § 76] shall be considered to have been wrongfully discharged." 24 V.I.C. § 76. On its face, the WDA does not provide for a cause of action for constructive discharge. However, "[t]here is a split of authority among courts sitting in the Virgin Islands with respect to the viability of a claim for constructive discharge under the WDA." Fraser v. Kmart Corp., No. 2005-0129, 2009 WL 1124953, at *4 (D.V.I. Apr. 24, 2009).

For instance, in Williams v. Kmart Corp., the court found that a constructive discharge claim was not actionable under the WDA. No. 1999-0102, 2001 WL 304024, at *4 (D.V.I. March 5, 2001), amended, No. 1999-0102, 2001 WL 242523 (D.V.I. Mar. 13, 2001). This decision was subsequently discussed at length in Fraser where the court "reverse[d] its previous ruling in Williams v. Kmart [Corp.], 2001 WL 30402[,] and f[ound] that discrimination claims for constructive discharge are cognizable under the WDA." 2009 WL 1124953, at *6. Furthermore, in Harley v. Caneel Bay, Inc., the court recognized that a claim for constructive discharge under the WDA was cognizable. 193 F. Supp. 2d 833, 841-42 (D.V.I. 2002). Importantly, as both parties note, the Supreme Court of the Virgin Islands has yet to rule on this issue. For the purposes of this Motion, consistent with the reasoning set forth in the most recent cases, this Court will recognize Plaintiff's constructive discharge claim as a cognizable cause of action under the WDA. See e.g., Fraser, 2009 WL 1124953, at *5-6.

MHMC and MHS argue that Plaintiff's constructive discharge claim is preempted by the National Labor Relations Act ("NLRA"). See St. Thomas-St. John Hotel & Tourism Ass'n. Inc.

9

v. Gov't of U.S. Virgin Islands ex rel. Virgin Islands Dep't of Labor, 357 F.3d 297, 304 (3d Cir. 2004) (holding that the NLRA preempts WDA claims asserted by managerial or supervisory employees). However, based on the allegations in the Complaint and the briefing, this Court finds that there are insufficient facts to conclude whether Plaintiff performed managerial or supervisory functions. Accordingly, this Court will defer a determination regarding MHMC and MHS's preemption argument until more facts are ascertained.

To establish a *prima facie* claim for wrongful discharge under the WDA, a plaintiff carries the initial burden to show that (1) she was an employee; (2) of a covered employer; (3) she was discharged; and (4) the discharge was wrongful. Rajbahadoorsingh v. Chase Manhattan Bank, NA., 168 F. Supp. 2d 496, 505 (D.V.I. 2001). In addition to these elements, a plaintiff alleging a claim for constructive discharge must demonstrate "that the working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign." Harley, 193 F. Supp. 2d at 838. As several courts have articulated, a plaintiff is not constructively discharged if an employer has not been provided reasonable time to resolve a situation. See Agnew v. BASF Corp., 286 F.3d 307, 310 (6th Cir. 2002) ("An employee who quits a job in apprehension that conditions may deteriorate later is not constructively discharged."); see also Summit v. S-B Power Tool, (Skil Corp.), a Div. of Emerson Elec. Co., 121 F.3d 416, 421 (8th Cir. 1997) ("To act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly. An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged.").

In the instant matter, drawing all inferences in favor of Plaintiff, this Court finds that there are insufficiently pled facts to support a claim for constructive discharge. As the Third

Circuit has opined, "a reasonable employee will usually explore such alternative avenues thoroughly before coming to the conclusion that resignation is the only option." Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993). Here, Plaintiff resigned "immediately" after she was informed about the decision to allow Mendoza to return to the Resort. Plaintiff resigned despite being advised to inform her supervisor if she had any further issues with Mendoza. Plaintiff does not provide any facts indicating that she explored any alternatives before resigning. Furthermore, in resigning the very same day that MHMC and MHS made their decision after investigating Plaintiff's complaints, Plaintiff does not provide any facts demonstrating that she gave her employer reasonable time to resolve the problem. Although Plaintiff was allegedly scared of Mendoza, the allegations set forth in the First Amended Complaint do not support her conclusion that a reasonable person would have felt the same way. Accordingly, Plaintiff's constructive discharge claim cannot withstand the motion to dismiss stage.

### C. Count III: Vicarious Liability

In Count III, Plaintiff sets forth a claim for vicarious liability. (Am. Compl. ¶¶ 81-85.) Plaintiff alleges that MHMC and MHS hired Sweeny and Sweeny hired Mendoza. (Id.) Plaintiff claims that MHMC, MHS, and Sweeny are responsible for Mendoza's actions toward Plaintiff based on the theory of vicarious liability. (Id.)

MHMC and MHS argue that vicarious liability is not a viable cause of action and instead is a legal concept regarding transfer of liability. (MHMC and MHS Br. 17.) Plaintiff asserts that the Restatement (Second) of Torts provides for vicarious liability claims and that such laws govern where there are no laws of the Virgin Islands to the contrary. (Pl. Opp. 16.)

Neither party identifies case law from this district regarding whether vicarious liability can be an independent claim. Plaintiff relies broadly on "the vicarious liability claims found in the Restatement (*Second*) of Torts." (Pl. Opp. 16 (emphasis in original).) Although the Restatement (Second) of Torts references vicarious liability, it does not explicitly provide for a separate cause of action for vicarious liability. As noted in the Restatement (Second) of Agency, "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." RESTATEMENT (SECOND) OF AGENCY § 219 (1958). Consistent with MHMC and MHS's argument, this Court finds that vicarious liability cannot stand alone as a separate cause of action. Accordingly, Plaintiff's claim for vicarious liability is dismissed.

### D. Count IV: Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that defendant's "extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." Manns v. Leather Shop Inc., 960 F. Supp. 925, 930 (D.V.I. 1997); RESTATEMENT (SECOND) OF TORTS § 46 (1977). The defendant's alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1977). "When there is no physical injury, however, the conduct is expected to be 'sufficiently extreme and outrageous . . . [to] guarantee that the claim is genuine.'" Heywood v. Cruzan Motors, Inc., 792 F.2d 367, 372 (3d Cir. 1986) (internal citations omitted).

In the instant matter, Plaintiff alleges that "Defendants engaged in extreme and outrageous conduct in the creation of a hostile environment and in the grossly negligent response to Plaintiff's complaints and [in] the failure to acknowledge and properly investigate Plaintiff's

complaints." (Am. Compl. ¶ 87.) Plaintiff also relies on previously stated allegations in support of her claim for intentional infliction of emotional distress.

Based on the First Amended Complaint and the parties' arguments, this Court finds that Plaintiff fails to provide sufficient factual allegations in support of her claim. Other than asserting conclusory statements, Plaintiff does not relay facts relating to MHMC and MHS's alleged extreme and outrageous conduct. Moreover, "conduct that gives rise to Title VII liability does not necessarily support a claim for intentional infliction of emotional distress." Codrington v. Virgin Islands Port Auth., 911 F. Supp. 907, 916 (D.V.I. 1996) (holding that employer's "conduct in failing to take prompt remedial action when notified of [the alleged] harassment, while not to be condoned and in itself a violation of Title VII, as a matter of law is simply not the extreme and outrageous conduct to constitute a predicate for the tort of intentional infliction of emotional distress"). Here, although Plaintiff asserts that an employee threatened her and her employer acted with deliberate and reckless regard, this fails to meet the high standard required to establish a claim for intentional infliction of emotional distress. See e.g., Smith v. Virgin Islands Port Auth., No. 2002-227, 2005 WL 15459, at *13 (D.V.I. Jan. 2, 2005) (dismissing intentional infliction of emotional distress claim where plaintiff alleged "being overworked, not receiving notice of important meetings, having to fill out excessive paperwork . . . being denied medical leave, being allowed to travel to only one conference a year, being given insufficient and biased process in conjunction with her suspensions, and being treated 'worse than a criminal'"). Accordingly, Plaintiff's intentional infliction of emotional distress claim is dismissed.

### E. Count V: Negligent Infliction of Emotional Distress

To establish a claim for negligent infliction of emotional distress, a plaintiff must satisfy two elements: (1) "the negligent conduct must have placed the plaintiff in danger of his or her

own safety," and (2) "the plaintiff must have suffered some physical harm as a result of the emotional distress." Int'l Islamic Cmty. of Masjid Baytulkhaliq, Inc. v. United States, 981 F. Supp. 352, 370 (D.V.I. 1997) aff'd sub nom. The Int'l Islamic Cmty. of Masjid Baytul-Khaliq, Inc. v. United States, 176 F.3d 472 (3d Cir. 1999). There can be no liability for negligent infliction of emotional distress absent any physical or bodily harm. Fraser, 2009 WL 1124953, at *13 (citing RESTATEMENT (SECOND) OF TORTS § 313 (1977)) ("A physical manifestation of emotional distress is a necessary element to recover on a claim for negligent infliction of emotional distress.").

Here, Plaintiff claims that MHMC and MHS "caused, by way of their negligent infliction of emotional distress upon the Plaintiff, the injuries, damages and losses set forth herein." (Am. Compl. ¶ 92.) Plaintiff does not allege any physical harm. Moreover, the facts in the First Amended Complaint and the parties' briefs do not support any inference of physical harm to Plaintiff. Thus, Plaintiff's claim fails as a matter of law.[6]

### F. Count VI: Negligent Retention of an Employee and Count VIII: Negligent Supervision

To establish a claim for negligent retention or supervision, a plaintiff must demonstrate the following elements: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee was the proximate cause of the plaintiff's injuries." Mala v. Marine Serv. Mgmt., No. 2006-120, 2009 WL 2170071, at *2 (D.V.I. July 20, 2009).

---

[6] MHMC and MHS raise the issue of Plaintiff's claim for negligent infliction of emotional distress being barred by the exclusivity provision of the Virgin Islands Worker's Compensation Act ("WCA"). (MHMC and MHS Br. 19-20.) Because this Court finds that Plaintiff's claim fails as a matter of law, it is not necessary to address the WCA preemption issue.

In support of her claim for negligent retention of an employee, Plaintiff claims <u>inter alia</u> that MHMC and MHS knew about Mendoza's threats to Plaintiff, failed to warn employees of Mendoza's conduct, and the retention of Mendoza's "unfitness or dangerous characteristics" caused Plaintiff's injuries. (Am. Compl. ¶¶ 93-98.) In support of her claim for negligent supervision, Plaintiff alleges that MHMC and MHS failed to adequately oversee Sweeny, Mendoza's supervisor, after Plaintiff filed her initial complaint about Mendoza's threats. (Am. Compl. ¶¶ 103-10.)

The focus of the parties' briefs with respect to the claims for negligent retention and supervision relates to whether they are barred by the WCA. This Court does not reach this issue because Plaintiff's claims are factually insufficient. Plaintiff provides vague and conclusory allegations in support of her claim for negligent retention and supervision. For instance, Plaintiff fails to provide facts in support of Mendoza's incompetence, her alleged injuries, and that MHMC and MHS's retention of Mendoza caused Plaintiff's injuries. Drawing all inferences in favor of Plaintiff, the alleged facts do not support viable claims for negligent retention and negligent supervision. Accordingly, these claims are dismissed.

### G. Leave to Amend Under Fed. R. Civ. P. 15(a)(2)

This Court has discretion to grant a party leave to amend its pleading under Federal Rule of Civil Procedure 15(a)(2). <u>See</u> Fed. R. Civ. P. 15(a)(2) (articulating that "the court should freely give leave [to amend] when justice so requires"). In this case, Plaintiffs shall have thirty (30) days leave to amend the First Amended Complaint with respect to all counts addressed in connection with MHMC and MHS's Motions to Dismiss—hostile work environment (Count I), constructive discharge (Count II), vicarious liability (Count III), intentional infliction of

emotional distress (Count IV), negligent infliction of emotional distress (Count V), negligent retention of an employee (Count VI), and negligent supervision (VIII).

## II. Sweeny's Motions to Dismiss

The following five claims are directed toward Sweeny in Plaintiff's First Amended Complaint: vicarious liability (Count III), intentional infliction of emotional distress (Count IV), negligent infliction of emotional distress (Count V), negligent retention of an employee (Count VI), and negligent supervision (VIII).

### A. Count III: Vicarious Liability

As this Court previously concluded, Plaintiff's claim for vicarious liability cannot stand alone as a separate cause of action. Accordingly, Plaintiff's claim for vicarious liability is dismissed.

### B. Count IV: Intentional Infliction of Emotional Distress

Plaintiff alleges that "Defendants engaged in extreme and outrageous conduct in the creation of a hostile environment and in the grossly negligent response to Plaintiff's complaints and the failure to acknowledge and properly investigate Plaintiff's complaints." (Am. Compl. ¶ 87.) Plaintiff also relies on previously stated allegations in support of her claim for intentional infliction of emotional distress.

As Sweeney argues, "[a]s a matter of law, Plaintiff may not maintain a claim for the intentional infliction of emotional distress or for punitive damages based on a theory of *respondeat superior*." (Sweeny Br. 6.) This Court agrees. See Codrington v. Virgin Islands Port Auth., 911 F. Supp. 907, 915 (D.V.I. 1996) ("It is the law of most jurisdictions, as well as the law in the Virgin Islands, that an employer cannot be held liable for the tort of a person who intentionally injures an employee when that person is merely a supervisor or manager and not the

employer in person nor a person who is realistically the alter ego of the corporation.") Moreover, Plaintiff has failed to set forth any factual allegations with respect to Sweeny indicating that he engaged in "extreme and outrageous" conduct. (See Am. Compl. ¶¶ 86-88.) Plaintiff does not allege that Sweeny was present at the time of the argument with Mendoza on November 10, 2012. Furthermore, Plaintiff does not allege that she ever encountered or met Sweeny. Accordingly, there is no basis for Plaintiff to assert a claim for intentional infliction of emotional distress against Sweeny; thus, this claim is dismissed.

### C. Count V: Negligent Infliction of Emotional Distress

As previously articulated, Plaintiff alleges that Defendants, including Sweeny, "caused, by way of their negligent infliction of emotional distress upon the Plaintiff, the injuries, damages and losses set forth herein." (Am. Compl. ¶ 92.) Plaintiff does not allege any physical harm, a necessary element for a negligent infliction of emotional distress claim. Furthermore, the facts in the First Amended Complaint do not support any inference of physical harm to Plaintiff. Thus, Plaintiff's claim fails as a matter of law.

### D. Count VI: Negligent Retention of an Employee and Count VIII: Negligent Supervision

In support of her claim for negligent retention of an employee in Count VI, Plaintiff claims that Defendants, including Sweeny, knew about Mendoza's threats to Plaintiff, failed to warn employees about Mendoza's conduct, and the retention of Mendoza's "unfitness or dangerous characteristics" caused Plaintiff's injuries. (Am. Compl. ¶¶ 93-98.) In support of her claim for negligent supervision in Count VIII, Plaintiff alleges that Sweeny "created an unreasonable risk of harm to the Plaintiff by failing to adequately supervise, control or otherwise monitor the activities of his employee, Mendoza after Plaintiff filed her initial complaint regarding the threats made by Mendoza towards the Plaintiff." (Am. Compl. ¶ 107.)

As previously discussed with respect to MHMC and MHS, Plaintiff provides vague and conclusory allegations in support of these claims. Specifically, Plaintiff does not indicate any factual support for a claim against Sweeny. Drawing all inferences in favor of Plaintiff, the alleged facts do not support viable claims for negligent retention and negligent supervision. Accordingly, these claims are dismissed.

### E.  Leave to Amend Under Fed. R. Civ. P. 15(a)(2)

This Court has discretion to grant a party leave to amend its pleading under Federal Rule of Civil Procedure 15(a)(2). See Fed. R. Civ. P. 15(a)(2) (articulating that "the court should freely give leave [to amend] when justice so requires"). In this case, Plaintiff shall have thirty (30) days leave to amend the First Amended Complaint with respect to all counts addressed in connection with Sweeny's Motions to Dismiss—vicarious liability (Count III), intentional infliction of emotional distress (Count IV), negligent infliction of emotional distress (Count V), negligent retention of an employee (Count VI), and negligent supervision (VIII).

**CONCLUSION**

For the reasons stated above, MHMC and MHS's Motions to Dismiss are **GRANTED** and Sweeny's Motions to Dismiss are **GRANTED**. Plaintiff shall have thirty (30) days leave to amend the First Amended Complaint in a manner consistent with this Opinion.

s/ Susan D. Wigenton, U.S.D.J.

cc:     United States Magistrate Judge Ruth Miller